Daniel W. Ellis v. Commissioner. Daniel W. Ellis and Anna Swinton W. Ellis v. Commissioner.
Daniel W. Ellis v. Commissioner
Docket Nos. 34505, 34506.
United States Tax Court
1954 Tax Ct. Memo LEXIS 332; 13 T.C.M. (CCH) 15; T.C.M. (RIA) 54021; January 13, 1954
*332 Held, petitioners in subdividing inherited real property and selling individual lots as home-building sites were not engaged in a trade or business within the meaning of Section 117 (j) of the Internal Revenue Code. J. M. Wells, Esq., Box 626, Greenville, S.C., for the petitioners. A. F. Barone, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The respondent determined deficiencies in income tax of $4,653.94 and $1,352.03 against Daniel W. Ellis for the calendar years 1946 and 1947, and a deficiency in income tax of $290.62 against Daniel and Anna Swinton Ellis for the calendar year 1948. The two cases were consolidated for hearing and opinion. The only question involved is whether the gain realized from the sale of a number of parcels of real property is taxable as ordinary income or as capital gain. The income tax returns for the years in question were filed with the collector of internal revenue for South Carolina. Findings of Fact Petitioners Daniel W. Ellis and Anna Swinton W. Ellis are husband and wife. For the calendar years 1946 and 1947, Daniel W. Ellis filed separate income tax *333 returns, and for 1948 he filed a joint return with his wife. Daniel W. Ellis, hereafter referred to as petitioner, is a physician and a clinical pathologist. During the years in question he had a full-time teaching position at the Medical College of South Carolina and worked as a clinical pathologist at Roper Hospital in Charleston, South Carolina, and also did some work as a consultant. Dr. Ellis' earnings from his profession were $7,702.27 in 1946, $12,382.11 in 1947, and $12,766.60 in 1948. In 1935 petitioner inherited from his father a tract of 166 acres of land located about three miles southwest of Charleston. This is the only land that the petitioner has ever owned. Prior to 1946 the tract was used as agricultural land. In 1946 petitioner subdivided 44 acres of the tract into 72 lots suitable for home building. An engineering firm was hired to survey and establish lines for the subdivision. The work of putting the lots in condition for residential use consisted of scraping out five unpaved streets with a road machine, draining and clearing ditches, the installation of culverts, removal of trees and bushes, and the razing of one old building on the property. The total cost *334 incurred by petitioner in subdividing the 44 acres was $2,829.94. The petitioner hired J. F. Taylor, Sr., to supervise the details of the subdivision and to handle the sales of the lots. Taylor was not a real estate man, but was building his own home on the subdivision and consequently was available most of the time to prospective purchasers. His compensation was 15 per cent of all sales made by himself or by the petitioner. Sale of the lots was advertised by placing a sign on the property bearing the name of the development and the petitioner's telephone number. In April and May of 1946, the year in which the petitioner's tract was subdivided, 52 of the 72 lots for sale were sold. Four other sales were made in this year. Eight lots were sold in 1947, and in 1948 five lots were sold. All of the sales were made by Taylor or by the petitioner. The petitioner's wife kept a record of all sales and receipts. The net gain in each year from the sale of lots was $16,182.81 in 1946, $6,981.62 in 1947, and $2,312.24 in 1948. Opinion The question for decision is whether the gain realized by the petitioner from his sales of real property is taxable as ordinary income or as long-term capital *335 gain. This, in turn, depends on whether the property in question was held by the petitioner primarily for sale to customers in the ordinary course of his trade or business. Section 117 (j), Internal Revenue Code. If so, the realized gain is taxable as ordinary income. If not, the gain is treated as gain from the sale of a capital asset held for more than six months. At the outset the inquiry may be narrowed to the question whether the sales made by the petitioner or on his behalf were in the ordinary course of his business, since it is obvious from our findings of fact that between 1946 and 1948 the lots in petitioner's subdivision were held by him primarily for sale. In order to determine whether the petitioner was engaged in a business when he subdivided and sold a part of the real property he inherited, his conduct must be measured by the standards which have evolved from the numerous cases dealing with this question. The more important criteria in this determination are the reason for the taxpayer's acquiring the property in question; the sales activity of the taxpayer or those acting on his behalf, such as improving the property, soliciting sales by advertising *336 or more direct approach to prospective buyers; the continuity of sales or sales-related activity over a period of time; and the number, frequency and substantiality of sales. [1] Considered in the light of these criteria we do not think that the activities of the petitioner were such that he should be considered as having been engaged in the trade or business of selling real estate in the years in question. The petitioner acquired the property in question in 1935 by inheritance from his father. This is the only land the petitioner has ever owned. The only indication we have of the use of the property between 1935 and 1946 is that it was used for agricultural purposes petitioner decided to dispose of a part of it in the most profitable way. Of course his understandable desire for *337 a profitable disposition does not bear on the question presented here. Our concern is with what the petitioner did to realize the profit. Between 1946 and 1948 the petitioner was occupied full-time with his professional work and devoted relatively little time to sales activities. He made the necessary arrangements with an engineering firm subdividing his property. The tract was in such a condition that little work was necessary to put it in a condition suitable for building homes on it. The total cost of all improvements was $2,829.94. Sales were handled in an informal manner. The petitioner did not hire an experienced real estate man to make sales; instead, he arranged for one who was building a home on the subdivision to see prospective customers and to make sales. In addition, the petitioner himself sold some lots. Because of the demand for housing in this period, the sale of the lots did not require a great amount of solicitation. The petitioner testified that a number of the lots "had been spoken for" even before the subdividing had been completed. Although all sales took place over a period of less than two years, over 70 per cent of all sales were made within two months after *338 the tract was subdivided in 1946. After this only four sales were made in the rest of 1946. Eight lots were sold in 1947 and five lots in 1948. The only advertising to promote sales was by means of a sign on the property containing the name of the development and the petitioner's telephone number. Considering all of these activities and the tests which have been developed to aid in determining whether one is engaged in a trade or business within the meaning of section 117 (j) of the Code, we find that the petitioner was not so engaged, and, consequently, the petitioners are entitled to treat the gain realized from the sales of real property as gain from the sale of capital assets held for more than six months. Decision in each docket will be entered for the petitioner. Footnotes
1. E.g., Friend v. Commissioner, (CA 10, 1952) 198 Fed. (2d) 285; Dunlap v. Oldham Lumber Co., (CA 5, 1950) 178 Fed. (2d) 781; Snell v. Commissioner, (CA 5, 1938) 97 Fed. (2d) 891; Boomhower v. United States (D.C.N.D., Iowa, 1947) 74 Fed. Supp. 997; Martin Dressen, 17 TC 1443 (1952); and W. T. Thrift, Sr., 15 TC 366↩ (1950).